

FILED
2010 Mar-23  PM 04:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ALABAMA

WESTERN DIVISION

| | | |
|---|---|---|
| JAMES E. FRANKLIN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 7:09-CV-01340-LSC |
| | ) | |
| DAVID ABSTON, GREG CARR, | ) | |
| DEBRA ABSTON, SHAUN MINER, | ) | |
| DENISE HASTY, JIM CROWELL, | ) | |
| TANYA RAY, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration a partial motion to dismiss, filed on

October 26, 2009, by Defendants Sheriff David Abston, Deputy Greg Carr,

Deputy Debra Abston, Deputy Shaun Miner, Corrections Officer Denise Hasty,

Deputy Jim Crowell, and Nurse Tanya Ray.  (Doc. 8.)  Plaintiff, James E.

Franklin, Jr. ("Plaintiff"), sued Defendants for claims pursuant to the First,

Fifth, Sixth, and Fourteenth Amendments via 42 U.S.C. § 1983 ("1983") for

deliberate  indifference  to  serious  medical  conditions,  retaliation,  and

interference with the right to counsel. Plaintiff also makes state law claims for violations of Alabama Code § 14-6-19, intentional infliction of emotional distress, and negligent supervision, training, and retention.  The issues raised in Defendants' motion to dismiss have been fully briefed by all parties and are now ripe for decision.  Upon due consideration and for the reasons stated herein, the motion to dismiss is GRANTED in part and DENIED in part.

II.    Facts.[1]

Between 1996-1997, Plaintiff was employed as a dispatcher with the Pickens County Sheriff's Department under the supervision of Sheriff Abston. During that period, Plaintiff made repeated complaints regarding the treatment of inmates in the Pickens County Jail and regarding the treatment of county employees regarding overtime pay and working conditions.  Upon his cessation of employment, Sheriff and Deputy Abston made it known to Plaintiff that they were angry over Plaintiff's departure from employment with the Sheriff's Department.

On April 11, 2007, Plaintiff was indicted by a grand jury in Pickens

---

[1] For the purposes of this opinion, the facts are accepted as alleged in the Complaint.   Recitation of the facts alleged by Plaintiff in this opinion is not to be construed as a verification that the allegations are true.

County, Alabama on charges relating to his minor son.  These charges resulted from an investigation facilitated by Deputy Abston.  On June 17, 2007, Plaintiff was arrested in Florida and transferred to the Pickens County Jail on July 3, 2007.

Upon his arrival at the jail, Plaintiff was given a copy of his Grand Jury Indictment by Deputy Greg Carr.  Plaintiff asked Deputy Carr why he had not been taken to a judge to have his bond set.  Carr responded that he didn't have to take Plaintiff before a judge and did not respond to further questions regarding Plaintiff's bond.  Plaintiff asked Carr about an attorney, to which Deputy Carr stated the court would appoint an attorney "in good time."

Over the next few days, Plaintiff made two written requests for indigent attorney forms and spoke to Deputy Hasty, Miner, and Carr about receiving these forms.  Each time he was told that he would be provided the forms when the officers had time.  After nine days, Plaintiff asked Carr once again about an attorney, at which point Carr responded that he would not walk across the street to help Plaintiff.  Plaintiff did not receive his indigent attorney forms until July 21, 2007 on a day that Deputy Hasty was off work and a jailer provided them to Plaintiff in her absence.

Plaintiff completed the indigent attorney forms and returned them that same day.  The forms were then given to Sheriff Abston and Deputy Abston who did not submit them to the court for appointment of counsel until Deputy Abston desired to interview Plaintiff.  Plaintiff was appointed counsel on July 25, 2007, the same date of his scheduled interview with Deputy Abston.

During this period, Plaintiff's nephew mailed three separate sets of indigent attorney forms to Plaintiff at the jail.  The first two sets were opened at the jail and then returned to Plaintiff's nephew.  The final set remained at the jail for over ten days before being given to Plaintiff.

On September 11, 2007, Plaintiff's bond reduction hearing was held. At this hearing Deputy Abston gave testimony that included Plaintiff's former employment as well as statements Plaintiff maintains were untrue regarding that employment and her investigation of the crimes for which Plaintiff was charged.  At the hearing, Plaintiff's family testified that they were willing and able to post three separate pieces of property in order to satisfy the bond. The court inquired as to any problems with this arrangement, at which point Sheriff Abston indicated that the parcels being offered were not free

and clear.  Based on the testimony of Sheriff and Deputy Abston, the bond was not reduced and Plaintiff remained in the jail.

During his confinement at the Pickens County Jail, Plaintiff suffered from a variety of medical conditions which he claims were not treated and in fact were exacerbated by the ill treatment he received at the hands of Defendants.  Plaintiff is a diabetic and at the time of his incarceration was under medical instruction to check his blood sugar three times per day, to have three meals and three between meal snacks per day, and to take Glipizide, a time released diabetic medication, four times a day.  Plaintiff alleges that during his time in the Pickens County Jail, Defendants denied him the opportunity to check his blood sugar on a regular basis.  Plaintiff claims that Nurse Ray told him she was ordered by Sheriff and Deputy Abston to not check Plaintiff's blood sugar on a regular basis.  Plaintiff also claims he was denied between meal snacks and was given a high carbohydrate, rather than diabetic, diet.

Rather than the time-released medication he was prescribed, Plaintiff maintains he was given a once daily dosage of an alternate, non-time released medication.  Plaintiff repeatedly complained to Nurse Ray and the

other Defendants about this medication.  Plaintiff claims that Ray told him that they were trying to get the correct information.  Despite this assertion, nothing was done and Plaintiff continued to be denied the proper medications and dosage.

These acts reportedly resulted in the Plaintiff suffering from blurred vision, sleepiness, a tightness in his throat, and endangerment of Plaintiff's life.  On at least five occasions, Plaintiff's low blood sugar resulted in his loss of consciousness.  On one of these occasions, after prompting by fellow inmates, Ray had to administer glucose tablets in order for Plaintiff to regain consciousness.  On another occasion, Ray had to administer a shot in order to revive him.

On October 10, 2007, Plaintiff slipped on a wet floor in the jail and fell, breaking his nose and two front teeth.  Deputy Abston would not allow Plaintiff to stay overnight at the county hospital, informing them that the jail would oversee Plaintiff's care.  He was returned to the jail after two hours with only some pain medication.  Over the next several weeks, Plaintiff suffered headaches, nosebleeds, pain, blood drainage into his throat, and an inability to breath through his nose.  Despite repeatedly submitting medical

request forms, his condition was not treated.

While incarcerated, Plaintiff also suffered from advanced rheumatoid arthritis.  Plaintiff requested and was afforded an extra mattress in July 2007 due to the pain he suffers from arthritis.   In October 2007, this extra mattress was taken by Defendants Hasty and Crowell allegedly because of a new policy.  Plaintiff maintains that other prisoners were allowed to keep their extra mattresses.  Defendants also failed to allow Plaintiff to use his prescribed arthritis medication, giving him anti-inflammatories instead. Plaintiff claims that as a result he suffered great pain and crippling deformation of his hands and loss of range of motion.

Plaintiff contracted three separate staph infections, at one point waiting over ten days with open staph sores before Nurse Ray would see him. The medication he eventually received caused an allergic reaction, but Ray nevertheless continued to administer it.  Plaintiff also maintains that he was refused basic hygienic items by Defendant Hasty, and that Hasty also insisted on running the air conditioner even during freezing nights.

On January 9, 2008, Plaintiff was released on reduced bond from the Pickens County Jail.   All criminal charges were subsequently dismissed.

Plaintiff alleges that his treatment at the jail caused unnecessary pain, denied him access to the courts and adequate medical treatment and care, and denied him access to counsel and a reasonable bond, all of which violated state statutes and his constitutional rights.  Defendants have moved to dismiss a number of these claims.

III.    Standard.

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted.  To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations;" however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly,* 127 S. Ct.

1955, 1964-65 (2007) (internal citations omitted).[2] The plaintiff must plead "enough facts to state a claim that is plausible on its face." *Id.* at 1974.

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). A complaint has sufficient facial plausibility when "the plaintiff

---

[2] The Supreme Court in *Bell Atl. Corp. v. Twombly* abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson. See Bell Atl. Corp.*, 127 S. Ct. at 1968 (quoting *Conley*, 355 U.S. 41, 45-46 (1957)). The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp.*, 127 S. Ct. at 1969.

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citations omitted). Furthermore, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).

Claims that Plaintiff asserts pursuant to § 1983 must be subjected to the "heightened pleading" standard as articulated in *Dalrymple et. al. v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003).  "[W]hile Fed. R. Civ. P. 8 allows a plaintiff considerable leeway in framing its complaint, this circuit . . . has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998); *see also Dalrymple*, 334 F.3d at 996; *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003).  "More than mere conclusory notice pleading is required.  . . . A

complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Dalrymple*, 334 F.3d at 996 (citations omitted). "Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims.  This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right.  Accordingly, when reviewing a . . . motion to dismiss a § 1983 claim on qualified immunity grounds, we are guided both by the regular 12(b)(6) standard and by the heightened pleading requirement."  *GJR Investments, Inc.*, 132 F.3d at 1367.  Simply put, to survive the Motions to Dismiss his § 1983 claims, Plaintiff must set forth, with some specificity, nonconclusory allegations of fact that would allow the court to determine whether qualified immunity is proper.  Merely unsupported legal conclusions will not satisfy this burden.

Government officials sued in their individual capacity may invoke qualified immunity to the extent they were acting within the scope of their discretionary authority at the time of the alleged offense.  *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004).  That the Defendants were acting in the scope of their discretionary authority is not in dispute.  "Once

the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). The Court employs a two prong process to determine whether qualified immunity is appropriate.  A plaintiff must show that a constitutional right was violated and that the right was clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009).  Furthermore, it is not enough to show a "reasonable official's awareness of the existence of an abstract right." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997).  Rather, the Plaintiff must show "knowledge that *his* conduct infringes the right. Thus, if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.* (citations omitted) (emphasis in original).

As to Plaintiff's state law claims, Alabama law also provides for qualified immunity to police officers from "tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."  Ala. Code § 6-5-338.  This statute "shields every defendant who (1) is a 'peace officer,' (2) is

performing 'law enforcement duties,' and (3) is exercising judgment or discretion." *Howard v. City of Atmore*, 887 So. 2d 201, 204 (Ala. 2003).

Sheriffs and deputy sheriffs receive even more protection. "[S]heriffs and deputy sheriffs are executive officers of this State." *Ex parte Sumter County*, 953 So. 2d 1235, 1239 (Ala. 2006). Therefore, claims against "sheriffs and deputy sheriffs are barred by the absolute immunity of Article I, § 14, of the Alabama Constitution of 1901, when the sheriffs or the deputies were acting within the line and scope of their employment." *Id.* (citations omitted). This line of precedent renders sheriffs and deputy sheriffs immune from suit regarding the execution of the duties of their office in all instances other than when a plaintiff seeks injunctive or declaratory relief "(1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under a mistaken interpretation of the law, or (5) under the Declaratory Judgment Act to seek construction of a statute if he is a necessary party for the construction of the statute." *Ex parte Tirey*, 977 So. 2d 469, 470 (Ala. 2007).

IV.   Analysis.

    A.   Count I — Violations of the Due Process Clause of the Fifth and Fourteenth Amendment For Depriving the Plaintiff of Medical Care.

Defendants have moved to dismiss Fifth Amendment claims against all parties and Fourteenth Amendment claims against Deputies Carr, Miner, and Crowell.[3]  In his response to the motion to dismiss, Plaintiff acknowledges that Fifth Amendment Due Process claims apply only to the federal government and therefore cannot be asserted against state actors. Therefore, Defendants' motion to dismiss the Fifth Amendment claims is GRANTED.[4]

As to the Fourteenth Amendment claims against Carr, Miner, and Crowell regarding medical treatment, Plaintiff has failed to plead with the requisite specificity required by the heightened qualified immunity standards facts that indicate how these particular parties violated his constitutional

---

[3] Defendants concede that Plaintiff has stated a viable cause of action under the Fourteenth Amendment against Defendants David Abston, Debra Abston, Officer Hasty, and Nurse Ray.

[4] To the extent Plaintiff has stated claims for damages against Defendants in their official capacities, these claims are barred by the 11th Amendment. *Will v. Mich. Dep't of State Police* 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

rights.  *See Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) ("A complaint will be held defective if it fails to connect the defendant with the alleged wrong.") (citations omitted).  As to Carr and Miner, Plaintiff relies on statements in the complaint that broadly accuse the "defendants" of deliberate indifference to his medical needs.  While such statements might be sufficient to survive notice pleading under the *Twombly* test, qualified immunity requires more.  The specific claims made against Carr and Miner appear to relate to Plaintiff's request for indigent attorney forms, rather than Plaintiff's medical concerns.  As such, Carr and Miner are entitled to qualified immunity as to Plaintiff's claims regarding medical care.

Plaintiff has made a specific claim against Crowell, namely that he was involved in removing an extra mattress that Plaintiff was using because of his arthritis.  Plaintiff claims that Crowell in so acting was deliberately indifferent to Plaintiff's medical needs.  Deliberate indifference requires that the response to a prisoner's serious medical need must be "poor enough to constitute an unnecesary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."  *Taylor v. Adams*, 221 F.3d 1254,

1258 (11th Cir. 2000).   The Constitution "does not require comfortable prisons." *Blackshear v. Dowling,* 2009 U.S. App. LEXIS 2315 *3 (11th Cir. Feb. 9, 2009).

The Supreme Court, in assessing deliberate indifference, has stated, "We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).[5] The Eleventh Circuit has stated that an inmate must "satisfy both an objective and a subjective inquiry.   First, the plaintiff must prove an objectively serious medical need.   Second, the plaintiff must prove that the prison official acted with deliberate indifference to that need." *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005).   In order to prove an objective medical need, Plaintiff must show a medical need that "has been diagnosed by a

---

[5] As Plaintiff was a pretrial detainee, his claim falls under the Fourteenth Amendment, rather than the Eighth Amendment.   The analysis, however, is the same. *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985).

physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007).  Such a need must be one that "if left unattended, poses a substantial risk of harm." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citations omitted). Satisfying the subjective element of deliberate indifference requires the plaintiff to show "(1)subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Bozeman*, 422 F.3d at 1272.

Crowell is accused of removing a second mattress that Plaintiff had requested and was afforded due to the pain he suffered from his arthritis. Crowell explained at the time that the extra mattress was being taken from Plaintiff because of new jail policy, though Plaintiff alleges that other prisoners were allowed to keep their extra mattress.  While denying Plaintiff an extra mattress may have been negligent given Plaintiff's medical conditions, it is difficult to imagine how it could arise to the level required by Supreme Court and Eleventh Circuit precedent.  To the extent that the complaint does allege a risk of serious medical harm, it is confined to the

refusal by other Defendants to provide the appropriate medication, resulting in "great pain and the crippling deformation of Plaintiff's hands and loss of range of motion."  (Doc. 3 at 14.)  The only allegation regarding the removal of the extra mattress is that it caused "increased arthritic pain."  *Id*.  Even severe discomfort, however, "is insufficient to establish the objective component of an Eighth Amendment conditions of confinement claim."  *Chandler v. Crosby*, 379 F.3d 1278, 1295 (11th Cir. 2004) (assessing deliberate indifference in a claim involving excessive heat and lack of ventilation).  Risk of serious harm is required, and there is no supported allegation of that here.  Furthermore, turning to the subjective component, even if Plaintiff were able to show that sleeping on one mattress, rather than two, resulted in the infliction of serious medical harm, there is no supported allegation that Crowell was subjectively aware of such a fact.  He was only aware that Plaintiff claimed he needed the extra mattress for pain related to his arthritis.  Therefore, Crowell is due qualified immunity as to Count I.

> B.    Count II — Violations of the First and Fourteenth Amendment for Retaliating Against the Plaintiff for Exercising His Free Speech Rights.

In order to make out a claim for retaliation, the plaintiff must establish "first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Douglas*, 535 F.3d at 1321.  It is well established that the First Amendment right to free speech is violated when "a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006).  To succeed in a claim for retaliation, however, the prisoner must show that "his grievance was the cause of the retaliatory treatment." *Thomas v. Warner*, 237 Fed. Appx. 435, 438 (11th Cir. 2007) (citing *Farrow*, 320 F.3d at 1248).

Plaintiff claims that Defendants retaliated against him for complaints he made while a prisoner at the Pickens County Jail.  The complaint is replete with allegations of complaints, both verbal and written, regarding his treatment during his time at the Pickens County Jail.  It is evident that if Plaintiff was penalized for exercising his free speech rights, an established constitutional right would have been violated, thus stripping Defendants of any claim to qualified immunity.  Plaintiff, however, has failed to plead a

sufficient causal nexus between the alleged mistreatment and his protected speech.

Plaintiff states in his complaint that "Defendants retaliatory penalized Plaintiff in retaliation for his complaints in their treatment of him including, but not limited to, denial of basic hygenic materials, denial of proper medical care, and denial of access to legal counsel." (Doc. 3 at 20.) Plaintiff clarifies this position in the response to the motion to dismiss, saying, "Viewing the allegations in Plaintiff's Amended Complaint as true, he (1) exercised his right to protest that he was being denied medical treatment, being denied access to legal representation, and being denied basic hygienic necessities, and (2) in response, the Defendants subjected the Plaintiff to further acts of deliberate indifference to his serious medical conditions, denial of access to legal representation, and denial of basic hygienic materials." (Doc. 19 at 12.) Plaintiff's complaint, however, seems to indicate that Defendants' ill treatment of Plaintiff began immediately after his arrival at the Pickens County Jail and continued, unabated, throughout his stay at the Jail. The complaint also intimates that it was hard feelings from Plaintiff's turbulent time as an employee of the Pickens County Sheriff's

Department and his subsequent departure that formed the basis of Defendants ill treatment towards him, not any complaints that he may have made during his incarceration.  Taking Plaintiff's factual averments as true shows only that Plaintiff was mistreated, he complained, and the mistreatment continued.  In fact, Plaintiff's complaint repeatedly asserts that his complaints were simply ignored.  As Plaintiff has failed to plead a causal connection between his protected speech and mistreatment by Defendants, Defendants' motion to dismiss Count II is granted.

C.     Count III — Violations of the Sixth and Fourteenth Amendment for Denying or Interfering with Plaintiff's Right to Counsel.

As an initial matter, the parties agree that claims against Defendants Ray and Crowell for violations of the Plaintiff's Sixth Amendment rights should be dismissed.  Therefore, Defendants' motion is GRANTED in this respect.

Turning to the remaining Defendants, the Supreme Court has stated that the right of the accused to assistance of counsel "does not attach until a prosecution is commenced." *Rothgery v. Gillespie County*, 128 S. Ct. 2578, 2583 (2008).  The Court has further stated that commencement is defined as

"the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.*  In *Rothgery,* the Court noted in dicta, "It would defy common sense to say that a criminal prosecution has not commenced against a defendant who, perhaps incarcerated and unable to afford judicially imposed bail, awaits preliminary examination on the authority of a charging document filed by the prosecutor, less typically by the police, and approved by a court of law." *Id.* at 2589 (citations omitted).

In the present matter, it appears that the right to counsel had attached.  Plaintiff's complaint states, "On or about April 11, 2007, Plaintiff was indicted by a grand jury in Pickens County, Alabama, on false charges as alleged by his minor son."  (Doc. 3 at 6.)  After being transferred to the Pickens County jail on July 3, 2007, he immediately began to make requests for the requisite forms to seek appointment of counsel.  These requests were repeatedly denied, and Plaintiff was not appointed counsel until July 25, 2007.  The question before the Court is not, however, whether Plaintiff had a right to counsel, but rather whether he had an immediate right to counsel such that the twenty-two day delay he experienced in receiving appointed

counsel was a violation of a clear constitutional right.  In *Rothgery*, the Court explicitly refused to decide whether a six-month delay "in appointment of counsel resulted in prejudice to Rothgery's Sixth Amendment rights, and [we] have no occasion to consider what standards should apply in deciding this." *Rothgery*, 128 S. Ct. at 2592.  The Eleventh Circuit has not touched on this issue, and neither party has pointed this Court to any authority on this point.

The facts as pled by Plaintiff, however, indicate that, while he did not receive counsel as promptly as he would have liked, Plaintiff was appointed counsel before an interview with Deputy Abston regarding the crime for which Plaintiff was indicted.  (Doc. 3 at 9.)  It is unclear then what clearly established right was substantively violated by the delay in assigning Plaintiff counsel.  Plaintiff was assigned counsel before he attended the interview with Deputy Abston.   Furthermore, the facts indicate that an early appointment of counsel would not have resulted in Plaintiff's release from custody or lowered bond.  Even following appointment of counsel on July 25, 2007, Plaintiff did not receive a bond hearing until September 11, 2007. (Doc. 3 at 9.)  Further, this hearing did not result in his release from custody,

and in fact Plaintiff remained in the Pickens County Jail until January 9, 2008.  (Doc. 3 at 10, 17.)  It is apparent that while Plaintiff clearly had a right to counsel during any adversarial proceedings or interviews, he did not have a clear right to counsel immediately upon his arrival at the Pickens County Jail.[6]  To the extent Plaintiff did have a right to counsel, that right was not violated by the twenty-two day delay between his arrival at the Jail and his appointment of counsel.[7]  Therefore, Defendants' motion to dismiss Count III is granted.

> D.   Counts IV, V, and VI for State Law Claims as Asserted Against Sheriff Abston and Deputies Abston, Car, Miner, and Crowell.

Counts IV, V, and VI are state law claims against the sheriff and deputies for violations of state law.  As explained above, sheriffs and deputy sheriffs have absolute immunity from suit other than to the extent Plaintiffs seek an injunction or declaratory judgment.  *Ex parte Sumter County*, 953 So. 2d at 1239.   To the extent Plaintiff seeks damages from these

---

[6] Plaintiff states that his appointed counsel withdrew after three weeks due to a conflict of interest, but he makes no further claims regarding the appointment of a new counsel.

[7] Plaintiff also makes conclusory statements regarding false testimony given at his bail hearing by Sheriff and Deputy Abston, but he does not state what those statements were or how they violated any established rights.

Defendants, his claims are due to be dismissed.[8]

Furthermore, since Plaintiff is no longer in the custody of the Pickens County Jail, he lacks standing to pursue injunctive and declaratory relief.  In order to seek prospective injunctive or declaratory relief, a plaintiff must show a "real and immediate threat of future injury in order to satisfy the injury in fact requirement." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004).  There is no such threat sufficiently alleged. Therefore, Defendants' motion to dismiss for injunctive or declaratory relief is GRANTED.

E.  Count V Claim for Intentional Infliction of Emotional Distress.

As to the intentional infliction of emotional distress or outrage claim against Defendants Hasty and Ray, the Alabama Supreme Court requires a Plaintiff to show "(1) that the defendant's conduct was intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it." *Ex parte Crawford & Co.*, 693 So. 2d 458, 460 (Ala. 1997).

---

[8] As Defendants Hasty and Ray are not deputies, the state law claims against them remain.

Defendant is correct that the Alabama Supreme Court has so narrowly interpreted the tort of outrage as to limit it to three categories of misconduct: mishandling a corpse; barbaric practices employed by insurance companies to obtain settlement; and egregious sexual harassment. *Id.* at 460 n.1. In doing so, however, the Alabama Supreme Court has never stated that these are the only possible categories of misconduct for which the tort of outrage could apply. The Court will address this Count further if an appropriate Summary Judgment motion is filed. Hasty and Ray's motion to dismiss Count V is DENIED.

V.    Conclusion.

For the reasons stated above, Defendants' motion to dismiss will be GRANTED in part and DENIED in part. A separate order will be entered in conformity with this opinion.

Done this 23rd day of March 2010.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671